# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Triple S Farms LLC, Green Acres Dairy, LLC, Charles Fry and Emily Snyder, Rocky Point Farms, Inc., and Northcrest Dairy, Inc.,

           Plaintiffs,

v.

DeLaval Inc., West Agro, Inc., DeLaval Int'l AB, DeLaval Holding BV, DeLaval Holding AB, and Tetra Laval Int'l SA,

           Defendants.

DeLaval, Inc.,

           Counterclaim Plaintiff,

v.

Green Acres Dairy, LLC,

           Counterclaim Defendant.

Case No. 22-cv-1924 (KMM/SGE)

**ORDER**

---

This matter is before the Court pursuant to Plaintiffs' March 2, 2026 Motion for Sanctions and for *In Camera* Review of Certain Privilege Assertions. (Dkts. 532.) Defendants filed an opposition to the Motion and supporting documents on March 9, 2026 (Dkts. 543-47), and the Court heard argument on the motion on April 14, 2026. (*See* Dkt. 574.) The parties then requested and received leave to submit additional briefing, the last

of which the Court received on June 5, 2026. (Dkt. 599.) For the reasons that follow, the motion will be granted-in-part and denied-in-part.

## MOTION FOR SANCTIONS

### Background

Once again, the relevant procedural history warrants a brief recapitulation. On September 8, 2025, Plaintiffs filed a Motion for Class Certification and supporting briefing and exhibits. (Dkts. 442-49.) The next day, on September 9, 2025, this Court heard oral argument on multiple discovery motions. (*See* Dkt. 450.) In one of these motions, Plaintiffs requested an order compelling Defendants provide documents responsive to Request for Production ("RFP") 98, which sought discovery related to any agreements or waivers obtained from potential class members before and after this lawsuit was filed. (*See* Dkt. 409 at 6-8.) DeLaval argued that requiring production was premature because it had not moved to compel arbitration and the issue "may not ever ripen." (Sep. 9, 2025 Hr'g Tr., Dkt. 454, at 18:12-13, Dkt. 454.) DeLaval also argued that if it decided to "enforce those arbitration provisions, . . . that would be the opportunity" for Plaintiffs to challenge the validity of those agreements—which would make the discovery sought by RFP 98 appropriate. (*Id.* at 24:10-15.) After hearing the arguments of counsel, this Court denied Plaintiffs' motion that sought to compel responses to RFP 98 as premature, noting that "[i]f arbitration provisions and class actions waivers become issues advanced later in this case to contest class certification or the participation of other putative class members, Plaintiffs may refile their motion." (Dkt. 450.)

After the September 9, 2025 hearing, the parties continued to engage in the ordered discovery and briefing the Motion for Class Certification. (*See* Dkts. 465-67.) As predicted by Plaintiffs, in its opposition to class certification, DeLaval argued, in part, that certain class action waivers and arbitration agreements prevented some putative class members from participating in the certified class. (Dkt. 465 at 86-88.) Plaintiffs then resurrected RFP 98 and renewed their discovery requests seeking documents and information related to the class action waivers and arbitration agreements. When DeLaval protested, Plaintiffs refiled their Motion to Compel Discovery Responses. (Dkts. 468-71.)

This Court heard oral argument on Plaintiffs' renewed Motion to Compel on January 15, 2026. (*See* Dkt. 492.) DeLaval argued that because Plaintiffs were challenging the enforceability of the separate arbitration clauses and class-action waivers and a class had not yet been certified, communications about the clauses were not relevant and discovery into them was not appropriate. (See *id.*) After hearing the arguments of counsel, this Court granted the Motion to Compel and ordered Defendants to produce documents that were responsive to specific discovery requests, including RFP 98. Specifically, the Court ordered, "Defendants shall identify and collect emails from any custodians who sent arbitration and class action waivers or communications regarding them to V300 purchasers and the dealerships, including without limitation, business personnel that transmitted agreements to V300 purchasers and their dealerships." (*See* Dkt. 494 at 34:13-35:1.) The Court ordered DeLaval to produce these documents by February 17, 2026. (*Id.*) To avoid any potential confusion, the Court included the following in the minutes from the January 15, 2026 motion hearing:

> Plaintiffs' Motion to Compel (468) was **GRANTED**, and Defendants shall produce documents responsive to RFPs 98, 91, and 93 as stated by the Court on the record. This production shall occur no later than **February 17, 2026**. The Court determined that good cause exists to extend the deadline for non-dispositive motions only as they relate to discovery produced in response to the Court's order granting this Motion. Accordingly, the deadline for the parties to file any non-dispositive motions related to discovery produced as a result of this Order is extended to **February 27, 2026**.

(Minutes from Jan. 15, 2026 Mot. Hr'g, Dkt. 492.) Finally, this Court extended Plaintiffs' deadline to file a reply brief in support of their motion for class certification to March 17, 2026. (*Id.*)

Unfortunately, DeLaval failed to produce responsive documents by the Court's deadline. On February 18, DeLaval's counsel emailed Plaintiffs' counsel:

> Consistent with the Court's January 15, 2026 oral ruling on Plaintiffs' motion to compel, we have searched DeLaval's file systems and run the search terms Plaintiffs proposed in their motion. We are currently reviewing those documents for responsiveness and privilege, and expect to produce any non-privileged responsive documents next week. We will also serve a written amended response to the relevant requests for production.

(Dent Decl., Dkt. 535, Ex. 1.) Despite the Court's clear wording at the January 15 hearing and the text of the Minute Entry on the public docket, DeLaval's counsel claimed that they interpreted the Court to have ordered it to "search [its] file systems" by February 17, thereby misinterpreting the directive, "[t]his production shall occur no later than **February 17, 2026**." (*Id.*; Minutes from Jan. 15, 2026 Mot. Hr'g, Dkt. 492)

On February 24, 2026, Plaintiffs filed another motion—this time for an unopposed extension to file non-dispositive motions related to discovery produced pursuant to this Court's January 15, 2026 Order. (Dkt. 526.) According to Plaintiffs, DeLaval produced

4

only a few documents responsive to RFP 98 (the arbitration and class action waiver documents) three days late on February 20, 2026, and still had not produced any documents responsive to RFP 93 (documents concerning the financial performance of the V300 worldwide). (*Id.* at 2-3.) The parties requested additional time to allow for DeLaval's document production and another extension to the associated non-dispositive motion deadline. (*Id.* at 3.) This Court granted the motion in part and denied it in part, ordering deadlines for document production, non-dispositive motions relating to DeLaval's document production, and Plaintiffs' reply brief in support of class certification. (Dkt. 528.) The Court also ordered that any failure by DeLaval to produce documents responsive to RFP 93 would be addressed by this Court at an already-scheduled March 9, 2026 hearing on DeLaval's Motion for Leave to file Amended Memorandum and Expert Reports in Opposition to Plaintiffs' Motion for Class Certification. (*Id.*)

On March 2, 2026, Plaintiffs filed their Motion for Sanctions and for *In Camera* Review of Certain Privilege Assertions. (Dkt. 532-38.) Plaintiffs first argued that DeLaval's failure to produce documents responsive to RFP 98 as ordered by this Court merits sanctions up to and including an order precluding DeLaval's from offering certain evidence and adverse findings related to DeLaval's communications with putative class members. Plaintiffs also argued that DeLaval had improperly withheld and redacted documents that they should have produced, and requested this Court perform *in camera* review of 56 documents to determine whether DeLaval's privilege assertions are invalid under the crime-fraud exception.

Amidst all of this, the parties were in the middle of briefing a motion for class certification and motions to exclude expert testimony in support of class certification. (*See generally* Docket.) This Court held the aforementioned hearing on DeLaval's motion for leave to file amended memoranda related to pending class certification and expert exclusion motions on March 9, 2026. (See Dkt. 542.) This Court denied the motion. (*Id.*) DeLaval filed memoranda opposing Plaintiffs' motions to exclude expert testimony On March 12, 2026 (Dkts. 550-55), and Plaintiffs filed their reply briefing in support of their motion for class certification on March 24, 2026. (Dkts. 556-60.)

On April 8, 2026, Plaintiffs moved for leave to file additional briefing in support of their motion for sanctions, and DeLaval filed an opposing memorandum. (Dkts. 567, 573.) Thereafter, the Court held an in-person hearing on Plaintiffs' Motion or Sanctions and for *In Camera* Review of Certain Privilege Assertions on April 14, 2026. (Dkt. 574; *see also* Apr. 14, 2026 Hr'g Tr., Dkt. 577.) At the hearing, DeLaval's counsel argued that it complied with the January 15, 2026 Order, as they interpreted it. Counsel stated that it searched the documents collected from the set of custodians that the parties had agreed to at the beginning of the litigation in 2023, but it did not search documents of any other custodians. (*Id.* at 21:5-16.) The Court noted that its January 15, 2026 oral order required DeLaval to collect e-mails "from any custodians who sent arbitration agreements," not just custodians that the parties had earlier agreed on. (*Id.* at 32-33.)

At the hearing, the Court granted Plaintiffs' Motion for Leave to File Reply/Surreply briefing (*id.* at 3, Dkt. 577) and ordered DeLaval to produce certain discovery documents no later than April 28, 2026 (*see* Apr. 14, 2026 Ord., Dkt. 575). The Court reiterated that

DeLaval was to collect new documents from individuals other than the previously identified custodians and search those new documents for responsiveness. (Apr. 14, 2026 Tr. at 47:7-15, Dkt. 577.) In a written order, the Court ordered DeLaval to "conduct searches of file systems in its possession, custody or control that are likely to contain documents responsive to RFP 98—such as training materials, emails, and other responsive documents," and directed DeLaval to search the file systems DWS (aka Dealer Web Support) and CQT (aka Customer Quotation Too), the non-custodial repositories used by DeLaval to post resources for its dealers. (Apr. 14, 2026 Ord. at 2, Dkt. 575.)

On April 29, 2026, DeLaval's counsel informed the Court that it had produced 590 documents in compliance with the Court's April 14, 2026 Order after working with DeLaval's sales staff and all of the third-party dealers involved in V300 sales to putative class members. (Apr. 29, 2026 email from Anna Gadberry, counsel for DeLaval, to Judge Elkins (on file with the Court).) Counsel also stated that it searched the databases that the Court had identified in its order using the Boolean search terms that the Court required. (*Id.*)

On May 8, 2026, Plaintiffs' counsel emailed DeLaval's counsel asking why DeLaval (1) failed to produce or log any new documents about the decision to implement the arbitration clause and class action waiver, and (2) produced so few documents regarding what was disclosed when presenting the arbitration clauses and class action waivers and communications about the same. (Dkt. 586-1 at 6-7.) The parties conferred via email over the next few days. (*See id.* at 4-6.)

The parties argued the motion for class certification and motions to exclude expert testimony before Judge Menendez on May 11, 2026. (May 11, 2026 Hr'g Tr., Dkt. 583.) At the hearing, despite its email representations to Plaintiffs' counsel over the previous several days, DeLaval's counsel confirmed that the parties were still determining whether DeLaval had met this Court's deadline for producing documents. (*Id.* at 60:6-15.)

On May 15, 2026, DeLaval's counsel emailed the Court with an "update on compliance" with the Court's April 14 Order. Counsel wrote:

> With respect to the portion of the Order requiring that DeLaval produce "discovery regarding the communications about the decision to implement the arbitration clause and class action waiver," DeLaval produced all responsive, non-privileged documents in its possession, custody, and control, and those that could be reasonably obtained from third parties, as stated below. DeLaval did not produce a privilege log on April 28th because we believed that all responsive, privileged documents were reflected in the privilege log previously produced on February 23, 2026. However, after additional conversations and correspondence with Plaintiffs' counsel, DeLaval is in the process of collecting additional documents and will produce a privilege log reflecting responsive documents that were not previously logged.

(May 15, 2026 email from Anna Gadberry, counsel for DeLaval, to Judge Elkins (on file with the court).) Later that afternoon, Plaintiffs filed another motion for leave to file supplemental briefing in support of their motions, this time unopposed. (Dkt. 581.) The Court granted the motion and allowed both parties to file *another* supplemental brief, the last of which was filed on June 5, 2026. (*See* Dkts. 584, 585-87, & 599.)

Plaintiffs' second supplemental brief asserts that DeLaval failed to fully comply with the Court's April 14, 2026 Order by failing to produce or log any additional responsive documents despite the Court's orders. (Dkt. 585.) Plaintiffs argue that DeLaval's claim,

that it had previously identified and logged all responsive documents in its initial production, directly conflicts with both the absence of any such documents in the February production and the Court's compelled search for *new* documents following the April 14 hearing on the Motion for Sanctions. (Dkt. 585 at 3.) Additionally, Plaintiffs expressed skepticism that DeLaval's production regarding information disclosed when presenting the arbitration clauses and class action waivers to purchasers, dealerships, and putative class members was the result of a sufficient search. (*Id.* at 5.) In its supplemental response, DeLaval argued that it acted in good faith to comply with this Court's orders, and Plaintiffs' requested sanctions are overly harsh and not tailored to the alleged harm. (Dkt. 599.)

After months of back and forth, Plaintiffs' motion for sanctions (Dkt. 526) is fully briefed and ripe for review. Plaintiffs ask this Court to sanction DeLaval for failing to comply with its January 15, 2026 order compelling discovery. They assert that DeLaval's failure to produce documents and failure to conduct a reasonable search for responsive documents as ordered by the Court prejudiced them by hampering their ability to oppose DeLaval's arguments at the class certification stage by denying them evidence that would rebut DeLaval's positions. Plaintiffs also ask this Court to conduct an *in camera* review of several of DeLaval's claims of privilege. DeLaval's March 9 brief argues that Plaintiffs had all relevant and responsive documents in their possession, that the requested sanctions were disproportionate to any alleged violations of court orders, and that Plaintiffs have not presented sufficient evidence to support a reasonable belief that an *in camera* review would yield evidence that establishes an exception to DeLaval's claims of privilege.

## Analysis

### I.    Legal Standard

Federal Rule of Civil Procedure 37 provides federal courts with the power to sanction a party or counsel for failing to comply with a court order. Available sanctions for not obeying a discovery order include:

(i)    Directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)    Prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)    striking pleadings in whole or in part;

(iv)    staying further proceedings until the order is obeyed;

(v)    dismissing the action or proceeding in whole or in part;

(vi)    rendering a default judgment against the disobedient party; or

(vii)    treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also provides:

> Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

The application of Rule 37(b) is left to the district court's discretion, including "the decision to impose a sanction, the nature of the sanction imposed, and the factual basis for

the court's decision." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1019 (8th Cir. 1999). A finding of willfulness is not required to impose sanctions less severe than dismissal, default judgment, or striking of pleadings. *See Card Tech. Corp. v. DataCard, Inc.*, 249 F.R.D. 567, 570-71 (D. Minn. 2008) (explaining that for lesser sanctions "it is not a requirement that the party 'willfully' refuse to obey the Court's discovery order"). "The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp.*, 186 F.3d at 1022.

Federal courts have the inherent power to "'fashion an appropriate sanction for conduct which abuses the judicial process.'" *Aviva Sprots, Inc. v. Fingerhut Direct Mktg., Inc.*, 2013 WL 449775, at *17 (D. Minn. Jan. 8, 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). This includes the power to enter a sanction with dispositive effect. *Chrysler Corp.*, 186 F.3d at 1022. In exercising their inherent power, courts may impose sanctions ranging from dismissal—the most severe—to assessing attorney's fees. *Chambers*, 501 U.S. at 44-45. The Court can also impose sanctions such as excluding evidence or testimony and imposing an adverse inference instruction to the jury. *See Dillon v. Nissan Motor Co.*, 986 F.2d 263, 266-69 (8th Cir. 1993); *Stevenson v. Union P. R.R. Co.*, 354 F.3d 739, 746-50 (8th Cir. 2004). Courts must exercise these powers with "restraint and discretion." *Chambers*, 501 U.S. at 44. Sanctions imposed pursuant to the court's inherent powers are permitted where "a litigant act[ed] in 'bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Aviva Sports*, 2013 WL 449775, at *17 (quoting *Chambers*, 501 U.S. at 45).

## II.    Reasonable Sanctions

The record demonstrates that DeLaval engaged in discovery misconduct that cannot be excused as a mere accident. First, DeLaval failed to produce documents pursuant to the timeline ordered by this Court's January 15, 2026 order. On its own, this behavior gives this Court cause for concern. But in the context of this Court's signal in September 2025 that such discovery would be relevant if DeLaval raised certain arguments in opposition to class certification, DeLaval was on notice that it would "likely" have to produce responsive documents after it filed its opposition briefing and had plenty of time to prepare that discovery.

Second, DeLaval's claim that it misinterpreted this Court's January 15, 2026 order despite the context and clear ruling at the hearing is without merit. DeLaval's argued position, that this Court only ordered it to search its files for responsive documents by February 17, 2026, with the custodians agreed upon in 2023, rather than to produce new responsive documents by that date is incredulous. DeLaval missed the mark on both counts. Instead, DeLaval searched only documents that it had already collected and searched and then disclosed them late. The Court did not limit the ordered production to only custodians that the parties had previously identified or to only documents that DeLaval had previously collected. After all, if the Court expected DeLaval to search the documents that it had already collected, it would not have ordered DeLaval to "identify and collect" additional responsive documents. (*See* Jan. 15 Tr. at 34:18.)

That DeLaval failed to obey this Court's discovery order is inarguable. A party's failure to obey a discovery order is substantially justified when it is "justified to a degree

that could satisfy a reasonable person." *Bah v. Cangemi*, 548 F.3d 680, 683 (8th Cir. 2008) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "A substantially justified position need not be correct so long as 'a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.'" *Bah*, 548 F.3d at 683-84 (quoting *Pierce*, 487 U.S. at 566 n.2).

DeLaval has not shown that its repeated failure to comply with this Court's January 15, 2026 discovery order was substantially justified. DeLaval's hyperfocus on the Court's use of the word "custodians" and giving that word a definition that the Court did not runs contrary to what was sought in the motion to compel and what was ordered at the January 15, 2026 hearing. DeLaval attempted to create an ambiguity where none existed. DeLaval stridently argues that "these documents do not show a hint of the 'fraudulent scheme' Plaintiffs are convinced took place." (Dkt. 599 at 4.) This misses the point. The content of the documents that DeLaval produced in response to Plaintiffs' discovery requests and pursuant to this Court's orders is not the current concern. Rather, what concerns this Court is the fact that DeLaval did not produce responsive documents until after three rounds of briefing, three separate hearings, and two orders from this Court *requiring* their production.

### A. Prohibition of Defenses

The question now is what an appropriate sanction should be. Rule 37 sanctions "are an invaluable penalty and deterrent to be employed by district courts to thwart discovery abuse." *First Am. Bank v. Cont'l Ins. Co.*, 897 F.2d 319, 331 (8th Cir. 1990). The Court is confident that this level of misconduct does not support the entry of a dispositive sanction under Rule 37(b)(2)(A)(vi), but the Court cannot ignore that DeLaval raised the arbitration

clauses and class action waivers as a defense to certification while refusing to provide discovery of the same. DeLaval's refusal to provide relevant, court-ordered discovery over the past six months unnecessarily and vexatiously complicated discovery in this litigation and must be addressed.

When a party fails to comply with discovery despite repeated opportunities to do so, sanctions are appropriate. *Lorin Corp. v. Goto & Co., Ltd.*, 700 F.2d 1202, 1208 (8th Cir. 1983); *see also Baker v. Gen. Motors Corp.*, 96 F.3d 811, 817 (8th Cir. 1996) (refusal to produce documents pursuant to court order justified Rule 37 sanctions) (*rev'g in part on other grounds*). DeLaval had multiple opportunities to provide the relevant, court-ordered discovery regarding the arbitration agreements and class action waivers procured from V300 purchasers at the 74 farms that make up the putative class. Yet, they failed to fully comply with the Court's order, either in substance or by the deadlines provided. Plaintiffs have been prejudiced by DeLaval's failure to follow this Court's discovery orders before class certification was briefed and argued. Plaintiffs were left in the dark, unsure whether the discovery the Court had ordered would support or contradict their theories of argument in support of class certification, and DeLaval's foot-dragging ensured that even if it had produced the discovery as ordered, Plaintiffs would have had precious little time to absorb and analyze the information to use in support of their position.

Sanctions should be tailored to address the harm caused by the improper conduct. *See, e.g.*, *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994). And "[t]here is a strong policy favoring a trial on the merits and against depriving a party of its day in court." *Fox v. Studebaker-Worthington, Inc.*, 516 F.2d 989, 996 (8th Cir.

14

1975). DeLaval's proposed salve of providing Plaintiffs yet another opportunity to submit supplemental briefing related to DeLaval's arbitration-related opposition to class certification misses the mark. Despite DeLaval's representations to this Court, the Court is still uncertain if the discovery regarding arbitration agreements and class action waivers for the putative class farms has ultimately been provided. And providing Plaintiffs the opportunity to file another brief, after the motion for class certification has been argued and taken under advisement, does little to cure the prejudice.

Accordingly, to address the harm that Plaintiffs suffered as a result of DeLaval's conduct, this Court recommends that DeLaval be prohibited from presenting any defense that relies on arbitration agreements and class action waivers with the putative class members in their opposition to class certification pursuant to Rule 37(b)(2)(A)(ii). DeLaval ran out the clock. It should not now be allowed to advance arguments that it refused to provide Court-ordered discovery on.

### B. Reasonable Expenses and Attorney's Fees

An award of reasonable expenses, including attorney's fees, "to reimburse the opposing party for expenses caused by the failure to cooperate" is the least severe of all the sanctions that Rule 37(b) authorizes. *Ofoedu v. St. Francis Hosp.*, 234 F.R.D. 26, 33 (D. Conn. 2006). These sanctions are appropriate where the offending party's conduct require its opponent to spend time "hounding [them] for discovery instead of preparing the case." *A.O.A. v. Rennert*, Case no. 4:11 CV 44 CDP, 2018 WL 1251827, at *3 (E.D. Mo. Mar. 12, 2018) (cleaned up). A party against whom an award of expenses including attorney's

fees is sought can avoid sanctions where the conduct was "substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

The Court also concludes that DeLaval must pay Plaintiffs' reasonable expenses, including attorney's fees, caused by the failure to comply with this Court's January 15, 2026 Order. Fed. R. Civ. P. 37(b)(2)(C). In determining whether to impose an attorney's fee sanction against DeLaval and its counsel, the Court must consider whether the noncompliance discussed above is substantially justified and whether the circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(b)(2)(C).

As stated above, DeLaval's noncompliance was not substantially justified. The Court further determines that the circumstances of this particular discovery dispute make an award of expenses appropriate. DeLaval was told in September 2025 that if it argued that class certification should be denied based on arbitration clauses and class action waivers, this Court would likely order it to provide responses to RFP 98. Then, after DeLaval relied on arbitration clauses and class action waivers to oppose Plaintiffs' motion for class certification, DeLaval refused to produce documents in response to RFP 98, which caused Plaintiffs to file another discovery motion. When this Court granted that motion, DeLaval relied on a creative interpretation of this Court's order to avoid searching additional file systems for responsive documents as ordered. DeLaval then failed to produce documents or an updated privilege log by the Court-ordered deadline, and ultimately, Plaintiffs were forced into filing yet *another* motion in an attempt to compel compliance with this Court's order.

16

And in the background of all of this back-and-forth, the documents that Plaintiffs were seeking (and this Court ordered) would have borne directly on issues related to Plaintiff's motion for class certification, which the parties were in the process of briefing and which is now pending before District Court Judge Menendez. Plaintiffs had to hound DeLaval for discovery relevant to their motion for class certification for the better part of six months instead of preparing their case and motion for class certification. Attorney's fees and costs are a reasonable sanction for such behavior.

## MOTION FOR *IN CAMERA* REVIEW

In addition to their request for sanctions, Plaintiffs request this Court conduct a limited *in camera* review of 56 documents that DeLaval has withheld pursuant to claims of privilege.

The attorney-client privilege "does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing." *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001). As such, the privilege "does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989). The client must have been "engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme." *Pritchard-Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 281 (8th Cir. 1984) (citing *In re Murphy*, 560 F.2d 326, 338 (8th Cir. 1977). And the legal advice must have been obtained to *further* the fraudulent activity; it is not enough if the communication merely provides evidence of the fraud. *See In re BankAmerica*, 270 F.3d at 642; *Pritchard-Keang Nam Corp.*, 751 F.2d at 283 ("That

17

the report may help *prove* that a fraud occurred does not mean that it was *used* in perpetrating the fraud.").

A party must make a threshold showing that the legal advice was obtained in furtherance of and closely related to the fraudulent activity before a court may conduct an *in camera* review. *See Zolin*, 491 U.S. at 564; *In re BankAmerica*, 270 F.3d 641-42. "A moving party does not satisfy this threshold burden merely by alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud." *In re BankAmerica*, 270 F.3d at 642. "The threshold test determines whether a court may exercise its discretion to conduct an *in camera* review and requires the proponent of the exception to show that a reasonable person could believe in good faith that an *in camera* review could reveal evidence establishing that the crime-fraud exception applies." *Triple Five of Minn., Inc. v. Simon*, 213 F.R.D. 324, 326 (D. Minn. 2002) (citing *Zolin*). "This threshold showing must be made for each document." *In re BankAmerica*, 270 F.3d at 644; *see also Fair Isaac Corp. v. Experian Info. Sols., Inc.*, Case no. 06-cv-4112 (ADM/JSM), 2009 WL 10677479 (D. Minn. Mar. 23, 2009) (same).

Plaintiffs argue that the crime-fraud exception applies to DeLaval's assertions of privilege. They rely on *United States v. Adams*, Case no. 17-cv-64 (DWF/KMM), 2018 WL 5311410 (D. Minn. Oct. 27, 2018). There, the defendant asserted attorney-client privilege over his communications with his counsel regarding his fraudulent tax filings. The government demonstrated a "consistent indication" that the defendant had been involved in certain stock transactions and subsequent tax filings declaring the income through a different source. *Id.* at *3. Before conducting its review, the court determined

that, on that record, "a reasonable person could form a good faith belief that the [logged communications] may reveal that [the defendant] sought legal advice in furtherance of filing fraudulent tax returns." *Id.* at *4. The court then conducted an *in camera* review and determined that the government had failed to make the ultimate showing that the crime-fraud exception applied. *Id.* at *5.

For their threshold showing, Plaintiffs rely first on the timeline of events. They note that the *Bishop* litigation—a predecessor litigation concerning an earlier version of DeLaval's V300 machine—was settled in the spring of 2022, with a Class Action Settlement establishing a $55 million fund being signed on April 12, 2022. In the wake of the *Bishop* settlement, two things happened: 1) on May 9, 2022, this action was filed; and 2) a few weeks later, the DeLaval Group Board considered revising template sales agreements to include arbitration clauses and class action waivers. From this timeline, Plaintiffs argue that DeLaval "was engaged in a concerted effort to fraudulently induce putative class members to sign away their rights, without making the requisite disclosures about the pending litigation and the impact the class action waivers and arbitration clauses would have on the putative class members' rights[.]" (Mem. in Supp., Dkt. 533, at 24.) Plaintiffs also point to specific log entries for documents that show DeLaval was engaged in a "concerted effort" to get putative class members to sign arbitration clauses and class action waivers (*id.* at 26-27), and DeLaval's attempt to have Plaintiff Northcrest sign a new agreement containing an arbitration clause and class action waiver after Plaintiffs moved to add Northcrest as a Class Representative in April 2025 (*id.* at 28-29).

Based on the record, this Court determines that Plaintiffs have not made the threshold showing that the communications were made in furtherance of and closely related to the alleged fraud. The fact that DeLaval sought to implement arbitration clauses and class action waivers after resolving the *Bishop* litigation is not, in and of itself, evidence of fraudulent conduct. Neither is keeping track of which V300 customers had executed an agreement with the arbitration clause and class action waiver and which had not. It would be surprising to this Court if an international business like DeLaval did not do those things. Furthermore, although DeLaval's attempt to have Northcrest sign a new agreement after it had notice that Northcrest might become a putative Class Representative is concerning, it happened years after the communications that Plaintiffs identify for this Court to review.[1] Plaintiffs have failed to establish that a reasonable person would have a good faith belief that *in camera* review of the materials would reveal evidence to establish that the crime-fraud exception applies to DeLaval's assertions of attorney-client privilege.

## RECOMMENDATION

Accordingly, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** the District Court issue an Order, pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii) and its inherent powers, sanctioning DeLaval as follows: DeLaval should be precluded from relying on arbitration clauses and class action waivers to oppose class certification.

---

[1] It is also worth noting this as soon as DeLaval learned that its vendor had asked Northcrest to sign a revised agreement, it immediately agreed with Plaintiffs that the arbitration clause and class action waiver would not be enforceable as to Northcrest.

## ORDER

Additionally, for the reasons set forth above, and based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' Motion (Dkt. 532) is **GRANTED IN PART** to the extent that DeLaval is required, pursuant to Fed. R. Civ. P. 37(b)(2)(C), to pay the reasonable attorney's fees caused by DeLaval's violation of this Court's January 15, 2026 Order. Within seven days of this decision, Plaintiffs shall submit a petition for its reasonable expenses, including attorney's fees and costs, incurred in this Motion. Within seven days after such a petition is filed, DeLaval may file a response to that fee petition. Unless the parties are notified otherwise, the Court will issue a supplemental Order regarding the reasonable expenses, including attorney's fees, that will be imposed pursuant to Fed. R. Civ. P. 37(b)(2)(C) without further briefing or oral argument.

2. In all other respects, Plaintiffs' Motion (Dkt. 532) is **DENIED**.

Dated: July 31, 2026

*s/Shannon G. Elkins*
SHANNON G. ELKINS
United States Magistrate Judge

21