**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Triple S Farms, LLC; Green Acres Dairy, LLC; Charles Fry and Emily Snyder; Rocky Point Farms, Inc.; and Northcrest Dairy, Inc.,

Plaintiffs,

v.

DeLaval Inc. and West Agro, Inc.,

Defendants.

No. 22-cv-1924 (KMM/SGE)

**ORDER**

---

Plaintiffs are dairy farmers who purchased or leased the V300, a robotic milking system manufactured by Defendants DeLaval Inc. and West Agro, Inc. Plaintiffs allege that Defendants misrepresented the ability of the V300 to safely and effectively milk their cows and produce high quality milk fit for consumption. Plaintiffs sought certification of a class totaling 127 V300 purchasers. In opposition to the class-certification motion, Defendants offered the testimonies of two expert witnesses, David A. Reid and Terry Smith.

Before the Court is Plaintiffs' motions to exclude both experts' testimonies for purposes of the class-certification inquiry. (Dkts. 498, 505.) The motions are denied because the Court denies certification of the class without relying on the challenged portions of the expert opinions.

## I. Legal Standard

Under Federal Rule of Evidence 702, an expert's opinion testimony is admissible if

> it is more likely than not that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. In applying this rule, courts exercise a "gatekeeping role" and must apply a "liberal" standard that favors admissibility. *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019). Courts will admit expert testimony when: (1) the evidence is relevant and useful to the factfinder in deciding an ultimate issue of fact; (2) the witness is "qualified to assist the [factfinder]"; and (3) the evidence is reliable. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

The gatekeeping function is less exacting in the context of class certification because the purpose is not to protect juries from unreliable and unhelpful scientific evidence. *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011) (noting that there "is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself" (quoting *United States v. Brown,* 415 F.3d 1257, 1269 (11th Cir. 2005))); *see also In re Pork Antitrust Litig.*, 665 F. Supp. 3d 967, 986 (D. Minn. 2023) ("There is less need for the Court to protect only itself, so the Court may conduct a less stringent application of Rule 702 and *Daubert* at the class certification stage.").

## II. Motion to Exclude Expert Opinion of David Reid (Dkt. 498)

### A. Summary of Dr. Reid's Opinions

Defendants retained expert David A. Reid, D.V.M.,[1] to review the opinions of Plaintiffs' expert, Dr. Eric Gordon, regarding the V300's effects on Plaintiffs' milk production, milk quality, and cow health. (*See generally* Dkt. 466-2 ("Reid Rpt.") ¶¶ 1–2, 9.) In preparing his report, Dr. Reid reviewed Dr. Gordon's report and accompanying exhibits; data on milk production from Plaintiffs' farms, including compilation of that data prepared by counsel and related graphic representations prepared by Dr. Terry Smith, another one of Defendants' experts; data produced by Defendants and Dr. Smith's analysis of that data; and "[r]elevant published literature on conventional and automated milking systems[.]" (*Id.* ¶ 10.)

Dr. Reid's report discusses how dairy farms manage mastitis[2] and its impact on milk quality and production. (*Id.* ¶¶ 12–14, 16–34.) It explains that a dairy operation will obtain the best results (i.e., greater volume of higher quality milk) when cows are comfortable, with cow comfort relying on factors such as barn design and stall layout, water quality, choice of bedding, feed control, and consistent management of cow milking routines. (*Id.* ¶ 15.) Further, Dr. Reid observes that the transition to an automated milking system requires a shift from a "highly structured, routine driven" approach that focuses on

[1] Doctorate in Veterinary Medicine.

[2] Mastitis, which commonly affects dairy cows, "is an inflammation of mammary tissue in response to infectious agents and their toxins, physical trauma, or irritants." (Reid Rpt. ¶ 12.)

managing cows in groups to one that centers on individual cows. (*Id.* ¶¶ 46–48.) With the latter, "[t]he goal is to interfere as little as possible with the cow's natural rhythm, stepping in only when something is abnormal," and focus "on individual animal performance." (*Id.* ¶ 48.) Still, managing mastitis on a farm with a robotic milking system requires close attention to "all three areas of critical control, which are the cow's environment, the milking system, and the milking team." (*Id.* ¶ 54.) According to Dr. Reid, it also "requires the monitoring of clinical case rates and somatic cell counts ('SCC')," [3] which is "the most common indicator used for mastitis." (*Id.* ¶¶ 16, 37.)

There is no dispute that some of the data Dr. Reid reviewed relating to the SCCs for cows at the four named Plaintiffs' farms contained errors. *Compare* Dkt. 499 at 5–6[4] (Plaintiffs' discussion of the inaccuracies contained in data prepared by defense counsel), *with* Dkt. 554 at 9–10 (Defendants' acknowledgement of inaccuracies in SCC data); *see also* Dkt. 519 (Defendants' Motion to Amend Expert Reports). For example, Dr. Reid's report includes demonstrative charts created by defense counsel's paralegal and Dr. Terry Smith showing variation in monthly SCC levels for three plaintiffs' farms both before and after they switched to the V300. (*See* Reid Rpt. ¶¶ 73, 85, 98; *see also* Dkt. 501-2 ("Smith Dep.") at 223–24 (discussing the source of data used to create Dr. Reid's demonstrative pivot tables).) Dr. Reid also indicated that the fourth farm, Triple S, did not have consistent

[3] "Somatic cells are mostly white blood cells (or leukocytes) that are in milk." (*Id.* ¶ 37.)

[4] Except for citations to individually numbered paragraphs (such as the paragraphs in expert reports) and the internal pagination of deposition transcripts, the Court cites to the page numbers generated by CM/ECF.

SCC data available for analysis, but suggested that data concerning the "premiums" Triple S received for milk quality from their co-op indicated that its milk quality did not decline from their use of the V300. (Reid Rpt. ¶ 106.) Dr. Reid acknowledged that the information underlying these demonstrative graphs in his report was inaccurate. (Dkt. 501-1 ("Reid Dep. 1") at 171, 175, 178.)

However, Dr. Reid also reached other opinions unrelated to the flawed data and relied on other sources of information beyond SCC levels. He visited and inspected Rocky Point Farms and Northcrest Farms. (*Id.* ¶ 55.) As to Rocky Point, Dr. Reid observed several issues during his inspection that could affect cow comfort and sanitation and milk quality, including: a suboptimal stall setup that enabled cows to perch,[5] thus contributing to lameness; hindered access to feed in the stalls; insufficient bedding and hard-packed bedding with odors; poor storage conditions for feed and potentially unbalanced diets; and lack of cleanliness around robot arms and older foam-lens cleaning pads needing replacement. (*Id.* ¶¶ 56–73.) At Northcrest Dairy, Dr. Reid observed similar issues, as well as additional problems with generally unclean cows, inadequate manure removal and bedding, and unclean waterers and troughs. (*Id.* ¶¶ 74–85.) Dr. Reid also reviewed videos and pictures from the inspections of Triple S Farms and Green Acres Farms, which he did not personally visit. (*Id.*) Based on his review, Dr. Reid opined that there appeared to be similar issues at Green Acres Farm and Triple S Farms. (*Id.* ¶¶ 86–106.) With respect to

[5] Perching occurs when a cow stands only partially in the stall, with its hind legs outside the stall. This places extra stress on a cow's limbs and can lead to increased incidences of lesions and lameness. (Reid Rpt. ¶ 62.)

each of the Plaintiffs' farms, Dr. Reid opined that the issues he identified were reflected in the variable SCC levels shown in the admittedly flawed demonstrative graphs generated based on data from individual cow milk testing through Dairy Herd Improvement Associations. According to Dr. Reid, such SCC data "is the single best way to monitor and track the level of mastitis in individual dairy herds." (*Id.* ¶ 39.) Additionally, he considered "fact witness depositions associated with all four farms and available documents related to their milk production, milk quality, and heard health." (*Id.*)

Based on those various sources, Dr. Reid opined that "all four . . . [Plaintiffs] have individualized significant issues with cow cleanliness and cow comfort that impacted their ability to maximize their milk quality and production." (*Id.*) And "[s]ome of them had trouble with managing the change to a robotic milking environment and changes in farm managers affected others." (*Id.*)

Although Dr. Reid acknowledged that his report should be amended to correct the demonstrative graphs that relied on inaccurate and incomplete data, he maintained that the opinions he formed based on his observations from his farm visits and the videos and photos he reviewed remained unchanged. (Dkt. 555-1 ("Reid Dep. 2") at 180–82; *see also* Reid Dep. 1 at 178, 191 (stating that the conditions on the farms he observed "will and are going to impact their somatic cell count levels, mastitis levels, and milk production").).

**B. Analysis**

Plaintiffs argue that the Court should decline to consider Dr. Reid's opinion evidence for purposes of class certification. They assert that Dr. Reid's opinions are inadmissible as irrelevant and unreliable and characterize his deposition testimony as

having effectively withdrawn his report. More specifically, they argue that his opinions are irrelevant because they (1) depend on "fundamentally flawed data," and (2) "the analysis of somatic cell counts is not relevant to class certification." (Dkt. 499 at 19; *see id.* at 19–25.) And Plaintiffs contend that Dr. Reid's opinions are unreliable because he drew them from factually incorrect and incomplete data, and his only remaining opinion—that "mastitis is a multifaceted disease"—is too general. (*Id.* at 25–27 (cleaned up).)[6]

Plaintiffs' motion to entirely exclude Dr. Reid's opinion is denied for several interrelated reasons.[7] As an initial matter, the Court is not persuaded by Plaintiffs' characterization that Dr. Reid effectively withdrew his entire report at his deposition. In making this argument, they point to statements divorced from their broader context, which undermines the suggestion that Dr. Reid abandoned most of the opinions in his report. Indeed, he explicitly stated that he "stand[s] by" his opinions, which were largely based on his personal observations of Plaintiffs' farms, his review of documentation from inspections performed by others, and his many years of relevant experience. (Reid Dep. 1 at 191; Reid Dep. 2 at 113.) This includes his opinion that the conditions he observed will contribute to "increased somatic cell counts, irregardless of how [the cows] are milked." (Reid Dep. 2 at 113.) Contrary to Plaintiffs' suggestion, the Court disagrees that the only opinion Dr. Reid did not withdraw is that mastitis is a multifaceted disease. (Dkt. 499 at 27.)

[6] There is no dispute that Dr. Reid is qualified to offer the opinions he provides.

[7] To be clear, the Court is not relying in any way on the portions of Dr. Reid's opinions that analyzed or relied upon the flawed data.

Next, the parts of Dr. Reid's report that the Court considers in its decision to deny Plaintiffs' class-certification motion are independent of the inaccurate and incomplete SCC data. In fact, the majority of Dr. Reid's report and the opinions he offers do not depend on the flawed data and are based on his personal observations, his review of other evidence that is not challenged, and his extensive experience. The opinions drawn from those sources, including how individual farm conditions can affect milk production and quality, are relevant to the Court's decision on the motion. In particular, they are helpful in providing a sense of how individual issues are overwhelmingly likely to predominate over issues common to all V300 users. Therefore, the Court finds Dr. Reid's report to be relevant, useful, and reliable, at least in part.

Because Dr. Reid's opinion evidence easily satisfies the less stringent standard for admissibility of expert testimony at the class-certification stage, Plaintiffs' motion to exclude his testimony is denied. *Wholesale Grocery*, 946 F.3d at 1001 (8th Cir. 2019); *Zurn Pex Plumbing*, 644 F.3d at 613.

**III. Motion to Partially Exclude the Opinion of Terry Smith (Dkt. 505)**

Defendants also offered the expert report of Terry Smith.[8] In arguing that common questions would not predominate, Defendants relied on Dr. Smith's conclusion that Plaintiffs' farms were not representative of other farms using V300s. (Dkt. 467-1 ("Smith Rpt.") at 5.) To reach that conclusion, Dr. Smith applied a statistical method that Plaintiffs challenge as unreliable. Furthermore, Plaintiffs argue that Dr. Smith's analysis is irrelevant

[8] Dr. Smith holds a PhD in Dairy Science/Agricultural Economics.

because it rebuts a damages methodology that Plaintiffs did not propose and that the inclusion of inaccurate data renders his conclusions meaningless. (Dkt. 506 at 18.)

The Court finds it unnecessary to decide whether to partially exclude Dr. Smith's opinion. In denying class certification, the Court concludes that individual issues predominate over common questions without consideration of the challenged opinions of Dr. Smith's. For these reasons, the Court denies Plaintiffs' motion to partially exclude Dr. Smith's opinions from consideration of class-certification as moot.

**ORDER**

For the reasons discussed above, **IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' Motion to Exclude Opinions of David A. Reid, DVM (Dkt. 498) is **DENIED**.
2. Plaintiffs' Motion to Partially Exclude Opinions of Terry Smith (Dkt. 505) is **DENIED AS MOOT**.

Date: August 18, 2026

*s/Katherine M. Menendez*
Katherine M. Menendez
United States District Judge